E-FILED
Tuesday, 09 November, 2004  03:14:39 PM
Clerk, U.S. District Court, ILCD

IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| HOWARD VINCENT ASHLEY, ) | |
| Plaintiff, ) | |
| ) | FILED |
| v. ) | Case No. 04-1135 |
| ) | NOV 09 2004 |
| MATTHEW RAINS, et al., ) | JOHN M. WATERS, Clerk |
| Defendants. ) | U.S. DISTRICT COURT |
| | CENTRAL DISTRICT OF ILLINOIS |
| | URBANA, IL |

**PLAINTIFF'S MOTION TO ADD COPY OF REQUEST FOR LEGAL ASSISTANCE TO HIS MOTION FOR APPOINTMENT OF COUNSEL**

NOW COMES Plaintiff, HOWARD VINCENT ASHLEY, pro se, and moves this Honorable Court with PLAINTIFF'S MOTION TO ADD COPY OF REQUEST FOR LEGAL ASSISTANCE TO HIS MOTION FOR APPOINTMENT OF COUNSEL in the instant action.

In support thereof Plaintiff states the following:

1. On 15 October 2004, Plaintiff mailed his Motion for Appointment of Counsel to the Court, promising to submit a copy of his request for legal assistance, which is appended to the foregoing Motion.

2. The letter was forwarded through a third party who checked and corrected the addressee and the address prior to mailing.

3. Plaintiff did not get a response to his request for assistance and has therefore requested, of the Court, to appoint counsel to represent him in the instant action.

WHEREFORE, Plaintiff prays the Court to allow the request for assistance to be appended and considered along with his Motion for Appointment of Counsel.

Respectfully submitted,

*Howard V. Ashley 11/5/04*
Plaintiff, Pro se

```
                    Howard Vincent Ashley B39336
Preferred mailing address:      Place of incarceration:
3731 South Wells Street         Illinois River Correctional
Chicago IL 60609                Center - Route 9 West
(773) 538-8042                  P.O. Box 999
                                Canton IL 61520
```

1 December 2003

Geraldine Malkinson
Intake Counsel - ACLU
20 East Jackson
Chicago IL 60604

I am writing to you with the hopes that there is some assistance that your organization can provide regarding numerous acts of unlawful, civil rights violations by correctional officials in retaliation for my having and exercising my rights of freedom of speech and access to courts dating as far back as March 1999, which I have appropriately termed "Snyderism".

If, however, you are not able to assist in the civil rights actions to be filed, I urge you to participate as a conscientious observer, as I will go forward.

Upto now, I have struggled with maintaining minor issues in big arenas, and major issues in limited actions which have been delayed by prison officials causing delays in access and exhaustion of administrative remedies, hence the dating back to March 1999.

The actions will be divided into two Civil Rights suits. The primary issues involve Malicious Retaliations towards me for having and exercising my freedom of speech and access to courts rights in seeking administrative and judicial remedies regarding conditions of confinement.

The residual effects of the actions have the potential to reverberate throughout IDOC and to began to resolve the discriminatory practices of "no matter who files the complaint, it is decided in favor of correctional staff. Whether it is a disciplinary report or a committed person's grievance, staff are favored (notice I did not say "believed") over prisoners." I am not naive in my reslove and just like I know that it should not be 99.?% in favor of the staff, I know it shouldn't be 99.?% in favor of prisoners.

In other words, even if it were the majority of the time that the

1

decisions favored the staff, more reasonable percentages would be between 75 to 87%, as we are certified convicted felons and most are not only not remorseful but also non-: repentant; and/or re-habilating, with prison officials having better track records, according to their records, solidarity and faith in each other, than Federal law enforcement personnel, but IDOC staff receive less training than a commercial custodian upon hiring and the Federal hiring standards are stricter.

Prison officials have tried to "turn back the calendar", so to speak, to a time when there was not a formitable grievance procedure for prisoners and even further, when the system "is" so corrupt that there may as well not be a grievance procedure, as it has become so useless that it is the equivalant of just a procedural formality, in order to say that there is a procedure in place.

Slaves couldn't file complaints or get relief from grievances, so what is IDOC trying to convey?  As administrators concur with nearly everything their subordinates do and when it comes to my complaints, they have concurred with mostly unlawful, unconstitutional staff conduct, making the system discriminatory.  In fact, the grievances could be sent directly to the person signing the final appeal, as its not likely that it will land at the desk of a person who possesses the integrity to obey the constitution, when its obvious that the Director(s) have not or will not, but have aligned themselves with subordinates in positions of vigilantes, believing they are "avengers of the victims of crimes" adding vigilante-ism to sentences of incarceration.  Theoretically, this could be their cognizant reasoning or it could be that they are just hate-filled, but their actions will take center stage in the cases, with mind-sets being just supporting factors.  I have evidence to support my contentions.

I can expound the hell out of these issues, so feel free to glean the major aspects of the problems.

I am a logical man and in being logical, I can confidently say that retaliations towards me are factual, even meeting the U.S. Court of Appeals for the Seventh Circuit's standard of "A complaint states a claim for retaliation when it sets forth 'a chronology of

2

events from which retaliation may plausibly be inferred.'"
Zimmerman v. Tribble, 226 F.3d 568, 573 (7th Cir.2000).

The retaliations occurred during and following various exercises of my free speech activities.

The best example is recently, during a period from late October to mid-November 2002, I filed grievances. On 23 November 2003, the prison's Major (Rains) came to my assigned housing unit and proceeded to make threats towards me regarding the grievances that I had filed, so I wrote a grievance regarding his retaliatory threats. No questions were answered following inquiries about the grievance and knowing that they were trying to use the 60-day time limit for filing as a means of rejection, I submitted a copy to the Grievance Officer, the Administrative Review Board, the Warden and to the Supervisor of the Clinical Services Department of the prison along with a notarized Affidavit regarding the Retaliation grievance and two others, eight days before the 60th day.

The Grievance Officer decided to consolidate three grievaces that were independent, but issued an answer to none of the issues, instead answering the Affidavit, stating that she, Rains and K.C. Martin had not seen the 23 November grievance against Rains.

Since prison officials decided to play dumb about the three grievances and an affidavit, I filed a Mandamus to compel officials to allow me to invoke the grievance procedure. Within 30-days of the Defendants being served with the petition, I was accosted by a staff member and placed in segregation, charged with threatening the person that it took 5-months, an affidavit, a Mandamus petition and (3) submissions, in order to get the grievance about his threats put on file 5-months later 3-days after being charged with threatening him.

I was found guilty of threatening Rains, the Warden affirmed, the Grievance Officer denied the grievance about the retaliatory segregation placement and charges, the Warden concurred, the ARB affirmed and the Director concurred.

The 23 November 2002 grievance was meet with a time-barred rejection (bogusly) by the ARB, which has now been supplemented to the Madamus petition that caused it to be put on file.

They believe they are delaying the Court action or that I do not know that I have more that enough proof that I gave them a

3

chance to address the issue(s), whereas I am sure their problems stem from my having First Amendment rights and while they think they are delaying or preventing, they are violating the Amendment I said they loathe, i.e., evidence of my contentions that it is about the First Amendment.

IDOC has ventured to usurp my free speech rights in the interest of "getting paid for torturing with impunity" to the law and to the taxpayers regarding their services.

Due process to them means "due to be processed in any manner that we damn well please to" inspite of the Congress and the Courts.

Imagine the number of prisoners with release dates who don't know what I know and the examples being set by the government. Now imagine how many more have been released back into society. IDOC is in the business of making better criminals out of those intrusted to their care to the detriment of the citizens of the State of Illinois.

The first of the two suits, which will be the hardest to maintain, was delayed by the holding of the December 2001 grievance until one month after former Director Snyder left office in June 2003. The grievance was obtained by an Assistant Attorney General, unprocessed beyond affixing the date it was received, 13 December 2001, and the kick in the head is that Snyder was served with the related Mandamus petition in April 2002, with a copy of the grievance appended. The issue of delaying the exhaustion, along with the issues within the grievance should keep the suit afloat, with the intent to consolidate the pre-Decemebr 2001 issues under the common theme of retaliation, harassment and impediment of my protected speech activities and Snyder's signiture on the final decisions.

I may delay the filing of the second suit until a few months after the first one in order to be able to afford and manage both cases, and will also consider conjoining the later issues into the first case, as Snyder's role as acting Director during the first half of 2003 was tantamount to his role as Director, as the policy of retaliation towards me continued.

As you will notice I am using a safe, separate mailing address, please forward all correspondences to me via the Chicago address, as I am making sure we don't meet with more Anti-First Amendment

4

tactics by a disruption of my rights of freedom of association.

A Mandamus petition mailed to the Sangamon County Circuit Court on 30 October 2003 has not been heard from and since I have had one or more cases in that court continuously, with, the exception of one 9-month period, since 1998, I am checking into the whereabouts of the petition.

What are the odds of the petition never turning up?  Well, they tried one before and instead of Return to Sender, the package is in limbo.

I am also seeking to have them charged criminally through the Attorney General of Illinois' Office.  Fat chance!  However, this is how much to far they have gone, attacking my First Amendment endeavors, increasing their frequency from November 2002 through September 2003, and have only slowed down trying to give the impression of having stopped.

Again, I do not doubt the "fact that".  The "reason why" is only a one or the other, which is a lot better than not having any idea what their motivation is for being vindictive.

---

Please excuse the length and detail of this letter, as I wanted it to get to you without delay and if I had included documentation as evidence of my contentions, it could have delayed this pre-dated letter at the least another seven days.

Knowing you have received this letter, if you want documentation in support of the facts have I stated, I can forward them to you upon your request.

---

Thank you for your time and consideration in these matters.

Gratefully yours,
*Howard Vincent Ashley*

Addressee
Personal file

5



STATE OF ILLINOIS
OFFICE OF EXECUTIVE INSPECTOR GENERAL

32 WEST RANDOLPH STREET, SUITE 1300
CHICAGO, ILLINOIS 60601

ROD R. BLAGOJEVICH
GOVERNOR

Z. SCOTT
INSPECTOR GENERAL

May 11, 2004

Howard Ashley
#B39336
Route 9 West
PO Box 999
Canton IL 61520

Re:    Complaint Number 04-00482

Dear Mr. Ashley:

    We received and have reviewed your complaint. The Office of Executive Inspector General ("OEIG") was created by the Governor to investigate misconduct in the agencies, boards and commissions directly responsible to the Governor. The OEIG works closely with other inspectors general and agency investigators to complete its investigations. The nature of your allegation is such that the complaint is more appropriately addressed by the Chief of Investigations and Intelligence for the Illinois Department of Corrections, Mary Hodge, who specializes in these types of complaints. Accordingly, we have referred your complaint to that office. Please be aware that there are stringent "whistleblower" protections provided in the State Employees and Officials Ethics Act that prohibit retaliation against those who make good faith allegations of misconduct. Our office has closed the complaint upon this referral.

Very truly yours,

Z. SCOTT
Inspector General

By: *Deborah L. Steiner*
Deborah L. Steiner
First Deputy Inspector General

EXHIBIT
B