E-FILED
Monday, 03 January, 2005  03:17:33 PM
Clerk, U.S. District Court, ILCD

IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| HOWARD VINCENT ASHLEY, | ) | Appeal from the United States District Court, Central District of Illinois. |
| Plaintiff/Appellant, | ) | |
| | ) | |
| v. | ) | Case No. 04-1135 |
| MATTHEW RAINS, et al., | ) | HAROLD A. BAKER |
| Defendants/Appellees. | ) | Presiding Judge |

FILED
JAN 0 3 2005
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

PLAINTIFF/APPELLANT'S
BRIEF LISTING GROUNDS FOR APPEAL

Respectfully submitted,

*Howard V Ashley*

Plaintiff/Appellant, Pro se
Howard Vincent Ashley B39336
Hill Correctional Center
600 Linwood Road/P.O. Box 1327
Galesburg IL 61401

TRAIL COURT'S DISMISSAL OF PLAINTIFF'S COMPLAINT WAS BASED ON OBSCURED EXCERPTS TAKEN FROM THE COMPLAINT AND ASSUMPTION THAT ADMINISTRATIVE REMEDIES HAD NOT BEEN EXHAUSTED WHEN IT WAS STATED IN THE FIRST PARAGRAPH OF THE COMPLAINT THAT IT WAS PRUSUANT TO "... 42 U.S.C. section 1997(e)."

1. Plaintiff, Howard Vincent Ashley, submitted his 42 U.S.C. § 1983 Civil Rights complaint to the United States District Court in May 2004, alleging that he had been subjected to various forms of retaliation for and following his exercise of his United States Constitutional rights by prison officials at Illinois River Correctional Center from November 2002 through September 2003, which included threats from two staff members following submissions of grievances, disciplinary actions, cell reassignments, not being allowed to have a job assignment, obstructions of the grievance procedures which caused State Mandamus Petition just to be allowed invocation and attempts to place him in harms way, among other acts and omissions.

2. The District Court conducted a Merit Review Hearing on 25 May 2004 and suddenly on 20 December 2004, the Court dismissed the case by use of lesser excerpts from the complaint on issues where greater excerpts were available on the same issues and by ignoring the fact that 42 U.S.C. § 1997(e) was asserted at the beginning of the complaint, and if the Court had inquired, similar to if the Defendants' had raised the question of exhaustion in a Motion to Dismiss, evidence of exhaustion would have been tendered (See the exhausted issue presumed to have not been exhausted attached Ex.A).

3. The reasoning used by the Court was not in line with the "chronology of events" standard held by the Seventh Circuit Court of Appeals to be implications from which retaliation may plausibly be

1

inferred (See e.g., <u>Zimmerman v. Tribble</u>, 226 F.3d 568, 573 (7th Cir.2000).

4. The complaint and the Motion for Temporary Restraining Order (TRO) deplicts the responses and timings by prison officials on the same subjects being asserted in the administrative and Judicial complaints that preceded their actions, and as many times as they retaliated over the initial ten month period (and as alleged in the TRO request's Affidavit, seventeen months), the only thing that could cause any doubt would be "blind faith" in their character, but the chronology and abundance of events should diminish, not add to, doubt.

5. There are inferences of retaliation in the pleadings that are supported by evidence, not just allegations, however:

a. Intimidations and threats for filing grievances offends the First Amendment;

b. Attempts to block the complaint system/free speech activities offends the First Amendment;

c. Causing delays/continuances (also known by the Court as, "missed court deadlines") offends the First Amendment;

d. Punishing a prisoner for filing grievances offends the First Amendment; and

e. Not trying to halt [and] prevent further retalaitions, when it is within the powers, knowledge and duties of governmental officials, and/or apart of an oath to uphold the Constitution(s)(State and Federal) offends the First Amendment.

6. The complaints' context did not fail to state a claim upon which relief could be granted, as the issues asserted were:

a. (Major) Matthew Rains tried to intimidate and threatened Ashley

2

about the grievances that had been filed by asking did he not like it in this prison? and twice asking did he not like being in a level two prison, and as stated in the grievance, he had Ashley's Bureau of Identification department photograph in his hands, and therefore he knew Ashley had just recently transferred from a level two (higher security) prison. The only way to not see this as a threat is to not want to see it as one, conjoined with the fact that the grievances were sent to him expressly for the purpose of interviewing his staff about. "The First Amendment bars retaliation for protected speech." Crawford El v. Britton, 523 U.S. 574, 592 (1998). "The reason why such retaliation offends the Constitution is that it threatens to inhibit exercise of the protected right." Pickering v. Bd. of Ed. of Township High School Dist. 204, Will City, 391 U.S. 563, 574 (1968);

  b. Upon submission of the grievance regarding the threats by Rains, mentioned in the previous paragraph, the prison officials responsible, Rains, Trancoso and Bohler (Defendants), attempted to let time disqualify the complaint, along with the complaint about the "retaliatory placement on the upper deck of a locked down wing with a crazy recently released from segregation prisoner" complaint, when the Rains' threats grievance was resubmitted with the retaliatory place (sic) grievance and a letter/affidavit affixed with a Notary Public's seal, signiture and dated within 51 days of the day of Rains threats, which highlighted their intent not to address the complaints, as they were so determined not to, that they did so by accident, evidenced by thier allowance of the grievances 5 months later and only after being served with Summons in Mandamus. "The Federal Courts have long recognized a prisoner's right to seek administrative or judicial remedy of the conditions of confinement,

3

... as well as the right to be free of retaliation for exercising this right." Babcock v. White, 102 F.3d 267, 276 (7th Cir.1995) (citations omitted).

   c.  The placement on the upper deck of the locked down wing (sic), mentioned in the pervious paragraph, occurred a few days after Ashley underwent knee surgery, and should not have been placed on a upper deck where he had to climb stairs, to and from his cell, not to mention the other circumstances surrounding the suspect placement, when he had been assigned to a lower deck upon release from the infirmary for one day, and Bohler, Trancoso and Rains attempted to disqualify the grievance as stated in the previous paragraph. "The Federal Courts have long recognized a prisoner's right to seek administrative and judicial remedy ... Babcock, 102 F.3d, at 275.

   d.  Ashley filed a Mandamus Petition on 17 March 2003, regarding the attempts to obstruct the grievance procedure by not addressing the complaints listed in paragraphs a-c above, and by 25 April 2003, Ashley was placed in segregation charged with threatening the person who was named in two of the issues within the complaint for Mandamus. "The courts should not blithely proclaim their readiness to enjoin dangerous prison conditions ***, and at the same time turn a blind eye to claims that prison officials have retaliated against inmates for exercising their right to seek judicial remedy. [F]ederal courts must take cognizance of the valid constitutional claims of prison inmates. (Turner v. Safley, 482 U.S. 78, 84 ...)." Babcock, 102 F.3d, at 275.

   e.  Upon release from segregation, Ashley was being placed with known gang members, recently released from segregation, hell-raising

4

cellmates and after he complained, was moved 5 more times in less than 3 months, until he complained about the persistent moving (complaining did not solve the problems, it only caused officials to change their strategy, as with the problems listed in this paragraph, the placement Officer, Defendant, Stambaugh's role in the retaliations dating back to the retaliatory placement following knee surgery, became clearer. "To succeed on his retaliation claim ... need not establish an independent constitutional interest in either assignment to a given prison or placement in a single cell, because the crux of his claim is that state officials violated his First Amendment rights by retaliating against him for his protected speech activities." Babcock, 102 F.3d, at 275.

   f.  Ashley notified Stephanie Straughn, Assistant Attorney General, Defendant, of the retribution problems and requested investigation and prosecution (The common law powers and duties of the Attorney General include the initiation and prosecution of litigation on behalf of the people. People v. Buffalo Grove Confectionary Co., 36 Ill.Dec. 705, 708 (1980). Attorney General is the legal officer of the State, whose duties are prescribed by law. People v. Massarella, 10 Ill.Dec. 912, 916 (1977)), she declined intervention, by not answering the request and the retaliations continued (See also copy of an excerpt from the Illinois Attorney General Act, 15 ILCS 210/1 attached).

   These basic issues were listed in the complaint and reiterated in part in the Motion for Temporary Restraining Order (in the TRO, Plaintiff was able to list issues not listed in the complaint that were still going through administrative exhaustion and two of the issues were subjects of Mandamus Petitions, due to Good Conduct

5

credits revoked by two of the retaliatory acts, but all have been brought to the attention of the Director, who passed them on to his subordinates who could not see retaliation (or so they said) in any of the individual incidents and refused to acknowledge having looked at them collectively, as even children on a playground can recognize "paybacks")(See also the affidavit appended to TRO Motion).

7. If the Court was unclear about what Ashley had exhausted and/or was asserting, or doubted his assertion of 42 U.S.C. section 1997(e) in Count I, paragraph 1, of the complaint, inquiry would have been better than causing the drastic measure of Appeal (and there is no need claiming such inquiry was done over the telephone during the Merit Review, as appropriate answers would have been provided to the Court, just as they are being provided to facilitate this Appeal (?)).

8. Plaintiff hereby attach his affidavit and incorporates same to the foregoing Brief Listing Grounds For Appeal.

## CONCLUSION

**WHEREFORE**, Plaintiff prays the Court will consider the facts listed herein this Brief as grounds warranting Appeal.

Respectfully submitted

*Howard V Ashley*
Plaintiff/Appellant, Pro se

6

```
                    Ashley v. Rains, et al., No.04-1135 USDC CD-Il
STATE OF ILLINOIS  )
                   ) SS.
COUNTY OF KNOX     )
```

## AFFIDAVIT

I, HOWARD VINCENT ASHLEY, hereby declare, under penalty of perjury that the following statements are true in substance and in fact:

1. I am the Plaintiff, pro se, in the above entitled cause.

2. The complaint in the instant action came about as a lawful response by a convicted felon because of the unlawful responses that I received to my lawful attempts at resolution to problems surrounding the conditions of my confinement while incarcerated at Illinois River Correctional Center, in Canton, Illinois.

3. In other words, prison officials at Illinois River persistently retaliated in response and to try to deter my exercise of right of free speech via administrative grievances and judicial actions.

4. The complaint was filed in the Peoria Division of the United States District Court, Central Division of Illinois, with all listed incidents occurring in Fulton and Sangamon County, Illinois, and how the case found its way to the Urbana Division in front of Judge Harold A. Baker, on the opposite side of the State, is unknown to me.

5. I filed 3 or 4 motions in the case and seven days after I Motioned to Change and Correct Venue, the case was dismissed.

6. In my complaint, I have shown that when I exercised my freedom of speech rights in judicial and administrative complaints, things took turns for the worse (See e.g., Benson v. Cady, 761 F.2d 335, 342 (7th Cir.1985) "This chronology of events must include an action which changed for the worse the conditions experienced by the plaintiff."), with the responses by "named" prison officials reeking of "paybacks" and attempts to deter/silence my speech activities geared towards bettering my confinement conditions, as their responses included retaliating to retaliation grievances.

7. Exactly why Judge Baker misses my colorable First Amendment claims, beyond hypothesis, is unknown to me, as this is my second First Amendment case in his Court since 2000, with both being dismissed/appealed before Defendants responded to the complaints.

Page 1 of 4

8. For instance, in the latter case, if it seemed proper for Matthew Rains to ask me about my grievances and to ask if I did "not like it in a level three"(twice), the fact that:

    a. grievances were sent to him to get the staff's version of the events/incidents;
    b. in my twelve consecutive years IDOC custody, never before, nor since the Rains' visit, has any security staff ever tried to confer with me about a grievance sent to them by other staff for the purpose of getting the security staff's response to the complaint;
    c. Rains wasn't talking transfer, he was talking Higher "level" placement, i.e., threats;
    d. there is the appearence of impropriety in Rains' visit and admission to talking about grievances; and
    e. his reported excuse, to tell me that I had to obey the rules like any other offenders, when there was no indication during the first 48 days of my incarceration at Illinois River of any misbehavior on my part and during 11 consecutive years incarceration in IDOC, I had been in C-Grade twice and segregation 3 times prior to my time spent at Illinois River, so his excuse was pretextual, having nothing to do with the grievances or my record.

9. On page 5 of the complaint, Count I, paragraph 1, I asserted 42 U.S.C. section 1997(e), meaning that all of the issues in the complaint had been exhausted through available administrative remedies, but I never stated that all of the exhibits accompanied the complaint, so the Court's conclusion, without inquiring, is inaccurate, since the issue he states was not exhausted, was exhausted (See EX. A, appended to the Brief listing grounds for Appeal)

10. As to the grievance that I wrote about Rains threats, intimidations and Retaliation and the retaliatory cell placement after knee surgery, "delayed" would be a friendly way of describing what happened, but the grievance officer's Statement on the back of both responses sums it up better: "This grievance was addressed outside the timeframe in order to resolve pending litigation matters." (See Exhibits A-8 and No. 1, appended to the complaint), in other words, I had to go to Court to file two grievances and they don't just give in because someone invokes the judicial process.

11. The three main Defendants/constants at the onslaught of the retaliations, or the first 6 months, were Rains, Trancoso and Bohler, since the Court couldn't figure out from the context of the complaint which prison officials ?: the Major; the Acting Warden and the Grievance Officer, were involved in the issues he said was vague as

to the identity of the "prison officials" being accused.

12. The Illinois Attorney General has a duty to uphold the State and Federal Constitutions, and an Assistant Attorney General, Defendant, Straughn, having knowledge of three of the retaliatory acts and/or obstruction of the grievance procedure (and to deal with two subjects in this paragraph, contrary to the Court's statement in the order that lead to this appeal, Plaintiff's free speech rights are are apart of the grievances he submits administratively. (See Court's miscomprehension of the claim at page 3, issue 2)), ("The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury." Biven v. Six Unknown Narcotics Agents, 29 L.Ed.2d 619, 627, 91 S.Ct. 1999 (1971). Speech that seeks to expose improper operations of government or questions the integrity of governmental officials clearly concerns vital public interest. Wainscott v. Henry, 315 F.3d 344, 349 (2003)), having such knowledge as a member of the Attorney General's Office, obiligates her to upholding the Constitution(s), meaning, she couldn't be an innocent bystander and Plaintiff made sure she had knowledge of the ongoing retaliation acts as well as the issues within the mandamus petition. (REMINDER: Two issues were discussed in this paragraph)

13. To untangle the Court's assessment of the "Retaliatory placement on the upper deck of a locked down wing" issues, there was not a claim of inadequate medical treatment/care raised, as the treatment did not cause the problem, the <u>Retaliatory placement was the problem and was the proclaimed issue clearly printed in the complaint and repeated by the Court</u> (See Court's acknowledgement of the claim and obscuring of same at page 3, issue 4).

14. As the Warden, the Major and the Grievance Officer (Defendants: Trancoso; Rains; and Bohler) were constantly involved in the vindictive acts taken against me, as alleged in the complaint, when they committed the alleged impermissible acts and caused me to seek continuances in Court cases, that constitutes delays in the non-frivolous cases, and the question becomes can I prove their intents, or/and was there injury to the cases by their intent to retaliate to other free speech activies and/or [the] Court actions.

15. I am not looking for a fight with the Court, I have retaliating prison officials to contend with and only looked to the Court for remedy to the Constitutional violations, as my stance on punishment is based on individual performance and not on uniformity nor blind patriotism, in other words, just because one says that they represent the law does not mean that they are honest and good, as such is not the nature of mankind, being good is just as much a learned condition as being bad and both require maintenance (as we say in prison, there are two types of guards: those who violate the law and those who try not to violate the law, but don't report what they know about staff violations they witness).

16. If the Court has a problem discerning my claims, I am a pro se litigant, who was being retaliated against while I was filing the complaint, but did not fail to assert that I was being retaliated against for and following the exercise of my rights of free speech and exhausted issues prior to bringing the complaint, if it wasn't clear, to the Court, during the seven months between the hearing and a decision on "Merit Review" surely there was time to ask for clarity in the interest of justice.

FURTHER AFFIANT SAYETH NOT.

Pursuant to 28 U.S.C. section 1746, I declare, under penalty of perjury, that the statements contained in this four page affidavit are true and correct, and as to statements said to be based on information and belief contained therein, I believe same to be true.

/s/ Howard V Ashley

Howard Vincent Ashley B39336
Hill Correctional Center
600 Linwood Road/P.O. Box 1327
Galesburg IL 61401

SUBSCRIBED AND SWORN TO BEFORE ME ON THIS __30__ DAY OF DECEMBER 2004.

_Lenard E. Palmer_
NOTARY PUBLIC

"OFFICIAL SEAL"
Lenard E. Palmer
Notary Public, State of Illinois
My Commission Exp. 09/29/2007

Page 4 of 4



**Rod R. Blagojevich**
Governor

**Roger E. Walker Jr.**
Director

1301 Concordia Court / P.O. Box 19277/ Springfield, IL 62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

September 8, 2003

Howard Ashley
Register No. B39336
Illinois River Correctional Center

Dear Mr. Ashley:

This is in response to your grievance received on July 2, 2003, regarding a disciplinary report dated April 25, 2003, which was alleged to have occurred at Illinois River Correctional Center. This office has determined the issue will be addressed without a formal hearing.

You allege in your grievance that on April 25, 2003 Major Rains coerced C/O Ritter to take you out of line and write an IDR on you in retaliation for your grievances against Major Rains. You were alleged to have made intimidating and threatening statements against staff, of which you deny. You want your ticket expunged.

The Grievance officer's report and subsequent recommendation dated June 18, 2003 and approval by the Chief Administrative Officer on June 19, 2003 have been reviewed. The Grievance Officer's report states C/O Ritter overheard you make threatening statements, pulled you out of line, escorted you to Major Rains and had you repeat the statements. C/O Ritter stated he was not coerced into writing the IDR and stands by his report as written.

This office reviewed the disciplinary report written by C/O Ritter April 25, 2003 citing you for the offenses of 206 – Intimidation or Threats and 304 – Insolence. You were served the ticket, of which you refused to sign, on April 26, 2003.

The Illinois River Adjustment Committee reviewed the ticket May 6, 2003 and found you guilty of the offenses of 206 and 304. Recommended discipline was: Demotion to C grade 1 month; Segregation 15 days and Loss of Commissary 1 month. The Chief Administrative Officer concurred with the ruling May 7, 2003.

Based on a review of all available information and a compliance check of the procedural due process safeguards outlined in Department Rule 504, this office is reasonably satisfied you committed the offense and recommends the grievance be denied.

FOR THE BOARD: _Sherry Hile_
Sherry Hile
Administrative Review Board
Office of Inmate Issues

CONCURRED: _Roger E. Walker Jr._
Roger E. Walker Jr.
Director

cc: Warden, Illinois River Correctional Center
    Howard Ashley, Register No. B39336
    Chron. File

Exhibit A
Page 1 of 2

**RESPONSE TO COMMITTED PERSON'S GRIEVANCE**

**Grievance Officer's Report**

| | | |
|---|---|---|
| Date Received: 06.12.03 | Date of Review: 06.18.03 | Grievance #: 03-0670 |
| Committed Person: Howard Vincent Ashley   4-B-25 | | ID#: B-39336 |

**Nature of Grievance:** IDR. The offender grieves IDR of 4.25.03 for 206 & 304 by c/o Ritter.

**Facts Reviewed:** The complaint and Disciplinary Tracking System records were reviewed.

The offender alleges that Major Rains coerced c/o Ritter to write the IDR in retaliation for the offender's grievances against Major Rains. The offender further warns that he will seek judicial remedy if his grievance is denied.

The issue was staffed with c/o Ritter, who stated that the IDR was written based upon statements made by the offender in a movement line Ritter was escorting, the offender was pulled from the line, escorted to Major Rains outside the Gym and asked to repeat the statements heard by c/o Ritter. C/o Ritter further stated that he was not coerced into writing the IDR and the IDR is accurate as written.

The grievance process and any steps that follow (litigation) are considered rights to any offender who wishes to exercise those rights and have no bearing on the outcome of any grievance. Grievances are considered for merit on a case by case basis, not based on prior grievances and their results.

Based upon a total review of all available information, and a compliance check of the procedural due process safeguards outlined in Department Rule 504, this Grievance Officer is reasonably satisfied that the offender was guilty and recommends that the offender's grievance be denied.

**Recommendation:** Grievance be denied.

Lois Parrish
Print Grievance Officer's Name       Grievance Officer's Signature
(Attach a copy of Committed Person's Grievance, including counselor's response if applicable)

**Chief Administrative Officer's Response**

Date Received: 6.19.03       ☒ I concur   ☐ I do not concur   ☐ Remand

Comments:

Chief Administrative Officer's Signature       6/19/03 Date

**Committed Person's Appeal To The Director**

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

Committed Person's Signature       ID#       Date

Distribution: Master File; Committed Person       Page 1       DOC 0047 (Eff. 10/2001)
(Replaces DC 5657)
Printed on Recycled Paper

```
                    Howard Vincent Ashley B39336
                    Ill.River Correctional Center
                    Route 9 West/P.O. Box 999
                    Canton IL 61520
```

Stephanie E. Straughn-AAG
Office of the Attorney General           22 SEPTEMBER 2003
For the State of Illinois
500 South Second Street
Springfield IL 62706

RE:  <u>Ashley v. Bohler, Trancoso & Tucker</u>, No. 03 MR 117

Mrs. Straughn,

    By now you have received my motion to supplement as it relates to two of the issues in my complaint for Mandamus and a new issue that is more than six months old.

    I tried to tell you of their intentions and I understand that you had to give them the benefit of the doubt.

    Before some of the further actions become an issue, maybe we can save some time and money, as I expect I. Tucker will ignore the certification of service and won't contact you.

    It should also be understood that they have "gone to the well" to many times with the same unlawful tactic, to the point of there being no doubt that their intention is to impede my exercising of my Civil Rights. You saw what occurred in 02 MR 180 (Ashley v. Jokicsh, et al.,) and in spite of you attaching a non-related decision to the 04 December 2001 grievance, we know it was not processed beyond affixing the date it was received.

    IDOC is grievance defending (which places burdens on your office, the Courts, the taxpayers and prisoners, while they "become" nuetral and your overburdened case loads increases), not attempting to reslove. Look at the difference in one of my claims.

    If they had talked to Major Rains about his behavior in November 2002, the next eighth months of them trying to make me forget about November 2002, violating the same Amendment (USC) that he did might not have happened. They turned a small case into a big one.

    Now I turn to you, an Officer of the Court and a representative of the Attorney General's office and call to your attention your obligations, as the State's prosecutor, not as IDOC's defense attorney, as nearly eight months of retaliating, punishing, harassing and trying to impede my freedom of speech activities (documented), is not

EXHIBIT<br>A

just a Civil matter, but is Criminal also.

Believe me, the other related matters (grievance numbers: 03-0331; 0670; 0631; 0482; and 0852, plus others related to actions such as moving me six times since my release from segregation in June, (4) times around court deadlines and/or on the morning of court hearings, and staff conduct) will be met with one form or another of the grievance defending tactics of: ask the staff did they do it, staff says no, grievance denied; act like the grievance was not sent; act like the grievance was late; or act like the grievance was confusing, or even act like I was crying wolf and the matters were being handled and I need to be patient.

Considering the potential for prosecution, a review of my grievance file and the Ill.River's grievance file for the period from October 2002 to the present, would yield evidence of my contentions. I believe their file will show an increase in the amount of grievances on file after they were served with the petition in 03 MR 117, and an increase in the amount of G.O.'s reviewing grievances.

Although they have six months, when possible, to issue a decision on grievances appealed to the director, they have still been issuing decisions within two months, so looking at their usual timing, some of the numbers listed above, of grievances, are past the two month period and are likely headed for work for the Court, your office and me, with them not knowing that most of the time their delays, though causing minor court actions, decease, by postponing, my case load for major court actions, with the intentions being more geared toward stopping my free speech activities. A little hint of how to accomplish that is: for them to stop violating my rights!

Sincerly yours,

Howard V. Ashley

cc:
Stephanis E. Straughn, AAG
Lisa Madigan, AG
file

EXHIBIT



| | | |
|---|---|---|
| **15 ILCS 205/6a**<br>**Repealed** | **EXECUTIVE OFFICERS** | |

**205/6a.** § 6a. Repealed by P.A. 86–962, Art. 7, § 7–3001, eff. Jan. 1, 1990

### Historical and Statutory Notes

The repealed section, relating to a prohibition of state's attorneys receiving fees from private persons, was derived from R.S. 1874, p. 172, § 6a, added by Laws 1903, p. 85, § 1.

**205/7.** Repealer [Acts repealed omitted]

Formerly Ill.Rev.Stat.1991, ch. 14, ¶ 8.

### Historical and Statutory Notes

This section was a repealer.

## ACT 210. CIVIL AND EQUAL RIGHTS ENFORCEMENT ACT

**Section**
210/0.01.  Short title.
210/1.     Division for enforcement of civil and equal rights; duties.

### WESTLAW Electronic Research

See WESTLAW Electronic Research Guide following the Preface.

### 210/0.01. Short title

§ 0.01. Short title. This Act may be cited as the Civil and Equal Rights Enforcement Act.

Laws 1943, vol. 1, p. 210, § 0.01, added by P.A. 86–1324, § 100, eff. Sept. 6, 1990.
Formerly Ill.Rev.Stat.1991, ch. 14, ¶ 8.9.

### Historical and Statutory Notes

**Title of Act:**
An Act to create a division in the office of the Attorney General for the investigation and enforcement of laws relating to civil and equal rights, and to make an appropriation therefor. Approved July 1, 1943. Laws 1943, vol. 1, p. 210.

### Library References

Civil Rights ⚖=441.
WESTLAW Topic No. 78.
C.J.S. Civil Rights § 448.

### 210/1. Division for enforcement of civil and equal rights; duties

§ 1. There is created in the office of the Attorney General a Division for the Enforcement of Civil and Equal Rights. The Division, under the supervision and direction of the Attorney General, shall investigate all violations of the laws relating to civil rights and the prevention of discriminations against persons by reason of race, color, creed, religion, sex, national origin, or physical or mental handicap, and shall, whenever such violations are established, undertake necessary enforcement measures.

Laws 1943, vol. 1, p. 210, § 1. Amended by P.A. 77–1212, § 1, eff. Aug. 23, 1971; P.A. 80–358, § 1, eff. Oct. 1, 1977.
Formerly Ill.Rev.Stat.1991, ch. 14, ¶ 9.

EXHIBIT